UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SARA M.,

            Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

Case No. 6:24-01074-AR

OPINION AND ORDER

---

**ARMISTEAD, United States Magistrate Judge**

    In this judicial review of the Commissioner's final decision denying Social Security benefits, Sara M. (last name omitted for privacy) challenges the Administrative Law Judge's findings regarding her subjective symptom testimony and the medical opinions of Dr. Joshua Boyd and Dr. Sarah Eckstein. (Pl.'s Br. at 3-20, ECF 11.) As explained below, the

Commissioner's decision is reversed, and this case is remanded for the immediate calculation and payment of benefits.[1]

## PROCEDURAL BACKGROUND

Plaintiff applied for Title II Disability Insurance Benefits (DIB) in 2019, alleging disability onset as of November 20, 2018. (Tr. 13.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 73-123.) On September 2, 2020, the ALJ issued an unfavorable decision. (Tr. 13-23.) The Appeals Council denied plaintiff's request for review in October 2020. (Tr. 166-68, 1-6.) Plaintiff sought review of that decision from this court on December 15, 2020, resulting in an order for remand after the parties stipulated to remand the case for further administrative proceedings. (Tr. 742, 745-46, 747-49.) On remand, the Appeals Council vacated the original hearing decision and ordered the ALJ to address the supportability factors when evaluating Dr. Eckstein's opinion. (Tr. 754.) After hearings on August 24, 2023, and February 22, 2024, the ALJ issued a new decision finding plaintiff was not disabled on March 6, 2024. (Tr. 658-70.) Plaintiff now seeks review of that decision.

## ALJ'S DECISION

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER
*Sara M. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01074-AR

gainful activity (SGA) since November 20, 2018. (Tr. 660.) At step two, the ALJ determined that plaintiff had the following severe impairments: posttraumatic stress disorder (PTSD), social anxiety disorder, generalized anxiety disorder, panic disorder, major depressive disorder, insomnia disorder, bulimia nervosa, bipolar disorder, and bilateral hearing loss. At step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 661.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that plaintiff had the ability to perform a full range of work at all exertional levels with these added limitations:

> persist at simple, routine, repetitive tasks, make simple work-related decisions, and perform work with few, if any, changes in the workplace, no assembly line pace work. [Plaintiff] can have no public contact and occasional coworker contact. [Plaintiff] can sustain work at noise levels of three or below (general office noise). [Plaintiff] needs to avoid concentrated exposure to hazards, such as heights and heavy machinery. (Tr. 662.)

At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 668.) Considering her age, education, work experience, and RFC, the ALJ found at step five that jobs existed in significant numbers in the national economy that plaintiff could perform, including such representative occupations as electronic worker, office helper, and inspector hand packager. (Tr. 669.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (simplified). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.  ***Subjective Symptom Testimony***

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Page 4 – OPINION AND ORDER
*Sara M. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01074-AR

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for disregarding her subjective symptom testimony. And plaintiff contends that the ALJ failed to support with substantial evidence the finding that plaintiff's statements were inconsistent with the medical evidence and other evidence in the record, and that the ALJ failed to identify what testimony she found not credible and what evidence undermined that testimony. (Pl. Br. at 17-19.) Plaintiff is correct.

1.   **Inconsistent Objective Medical Evidence**

The ALJ improperly discounted plaintiff's testimony about the limiting effects of her health impairments. The ALJ summarized various parts of the medical record attempting to show inconsistency between the record and plaintiff's testimony regarding her anxiety, PTSD, depression, bipolar disorder, and panic disorder. (Tr. 663-65.) Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (simplified); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons that explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007).

Here, the ALJ failed to do so. Instead, the ALJ provided a summary of medical evidence that she found undermined plaintiff's testimony by focusing on the evidence supporting her conclusion even when contrary evidence appeared in the same treatment notes. (Tr. 663-65.) An ALJ may not "cherry pick" evidence without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in record); *Garrison*, 759 F.3d at 1017 n.23 (holding an ALJ may not "cherry-pick" from mixed results to support a denial).

For example, the ALJ stated plaintiff's "anxiety and mood had improved" after her discharge from an overnight hospitalization in a psychiatric ward in November 2018. (Tr. 664.) Although the discharge summary reported plaintiff denied suicidal and homicidal ideation with normal mood, the same summary diagnosed plaintiff with bipolar disorder, PTSD, and severe depression with mild psychotic features. (Tr. 496.) Those records included reports that plaintiff's mood was "depressed/anxious," that she was "at highly elevated risk of self-harm," and that two years after plaintiff's discharge, she still "has current passive suicidal ideation (e.g. 'imagining a gun in my mouth')." (Tr. 563-64, 591-92.) The ALJ also asserted that "her mental impairments were managed with medication and therapy," citing a May 2019 treatment note in which plaintiff denied acute symptoms of depression and anxiety and reported that her bipolar disorder was managed with medication and therapy. However, that same page listed PTSD as a current diagnosis without indication of management or improvement. (Tr. 649.) Similarly, the ALJ asserted plaintiff had "normal 'psych' on examination" by citing records of normal insight, lack of neurological deficits, and plaintiff being alert and pleasant; yet records from the same

appointments included PTSD and bipolar disorder on plaintiff's "Problem List." (Tr. 664, 624-25, 639-40.)

Additionally, the ALJ acknowledged that plaintiff attended therapy in 2023, but found that "much of the focus was on her relationship with food[.]" (Tr. 664.) The ALJ's finding is misleading because the record listed plaintiff's chief complaint as "[m]y anxiety and my relationship with food," and ignores her bulimia nervosa diagnosis. (Tr. 1113, 1114, 1116.) Additionally, the ALJ identified therapy session notes to support her assertion that plaintiff's "[m]ental status examinations were unremarkable." (Tr. 664.) Contrary to the ALJ's finding, however, those same therapy notes describe plaintiff as "depressed," in a "current depressive episode," and "anxious." (Tr. 1112, 1114-16.)

Furthermore, as plaintiff argues, the ALJ failed to identify what portion of her testimony the ALJ found inconsistent or not credible and based on what evidence. (Pl. Br. at 17-19.) "The ALJ must state specifically which symptom testimony is not credible and what facts in the record leads to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1273 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Lambert v. Saul,* 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible") (citation modified); *Holcomb v. Saul,* 832 F. App'x 505, 506 (9th Cir. 2020) (holding that it was reversible error for the ALJ to discuss relevant medical evidence but fail to link the claimant's symptom testimony to specific medical records and explain why those records contradicted his symptom testimony).

Page 7 – OPINION AND ORDER
*Sara M. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01074-AR

Instead, the ALJ generally stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 663-64.) Because the ALJ failed to specify what testimony was not credible and link that testimony to the particular parts of the record, the ALJ has erred. *Brown-Hunter*, 806 F.3d at 494 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014).

Overall, the ALJ's analysis of plaintiff's subjective symptom testimony is mischaracterized and unsupported by the record. Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's symptom testimony.

**B.**    *Medical Opinion Evidence*

Plaintiff challenges the ALJ's consideration of the medical opinions of Drs. Boyd and Eckstein. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

1.      Joshua Boyd, Psy.D.

On February 10, 2020, Dr. Boyd, a reviewing agency psychologist, submitted an RFC at the reconsideration level that stated, in part, "[t]he [claimant] requires an understanding supervisor that clearly explains expectation and work procedures" because of her medical impairments. (Tr. 100.) The ALJ found Boyd's opinion unpersuasive because she found the term "understanding supervisor" to be "vague and also unwarranted." (Tr. 667.) To support that finding, the ALJ referred to plaintiff's "recent treatment records at 15F which do not indicate social deficits and interpersonal skills observed during the consultative examination at 9F/6, indicating the claimant was affable, cooperative, and socially appropriate with the examiner." (Tr. 667.) Not only did the ALJ fail to connect plaintiff's demeanor in a medical setting to plaintiff's need for an understanding supervisor, but the ALJ cited a page of plaintiff's consultative examination with Dr. Eckstein that opined plaintiff "seems to be struggling with intense anxiety around other people following her physical and sexual assault in the military." (Tr. 595.) As discussed in greater detail below, Dr. Eckstein opined that plaintiff would have mild to moderate "difficulty accepting instructions from supervisors," would have marked difficulties interacting with co-workers, and would have marked difficulties completing a normal workday or workweek. (Tr. 596.) Those statements directly contradict the ALJ's finding that plaintiff did not show social deficits and bolster Dr. Boyd's assessed limitations. As explained in Section A, an ALJ may not "cherry pick" evidence to support a finding of nondisability without considering its context in the record. *Ghanim*, 763 F.3d at 1164.

The ALJ's rationale for finding Boyd's opinion unpersuasive is not supported by substantial evidence and the ALJ has erred. *See Ghanim*, 763 F.3d at 1160-61; *Garrison*, 759

F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

## 2.     Sarah Eckstein, Ph.D.

On January 31, 2020, Sarah Eckstein, Ph.D., conducted a psychodiagnostic evaluation of plaintiff. (Tr. 590-99.) Dr. Eckstein diagnosed plaintiff with PTSD, social anxiety disorder, generalized anxiety disorder, panic disorder, recurrent moderate major depressive disorder, insomnia disorder, and mild bulimia nervosa. (Tr. 595.) In Dr. Eckstein's opinion, plaintiff would have no difficulty performing simple and repetitive tasks; mild to moderate difficulty performing detailed and complex tasks and accepting instructions from supervisors; moderate difficulty performing work activities on a consistent basis without special or additional instructions and accommodations; moderate difficulty maintaining regular attendance; and marked difficulty with the usual stresses encountered in the workplace, such as interacting with co-workers and the public, and completing a normal workday or work week without interruptions from a psychiatric condition. (Tr. 595-96.) Plaintiff's affect and mood were observed as anxious. (Tr. 595.) Dr. Eckstein opined that plaintiff's "complex chronic mental health conditions seem to significantly impair occupational functioning." (Tr. 593.)

The ALJ found Dr. Eckstein's opinion unpersuasive because it was "inconsistent with the treatment record and [plaintiff's] own statements to treating sources," and unsupported by Dr. Eckstein's contemporaneous evaluation of plaintiff. (Tr. 666.) Dr. Eckstein's report was inconsistent with the record, the ALJ found, because of plaintiff's treatment history and "her

level of independence in daily activities and ability to travel." (Tr. 666.) The ALJ's rationale is not supported by substantial evidence.

"We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment." 20 C.F.R. § 404.1530(c); *see Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment"); *see also Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

Here, plaintiff testified that she stopped attending therapy because:

> the VA kept trying to put me in group therapy and I was always the only female there and the guys tried to be supportive, but my—I wasn't disabled in a line of combat like they were, I was—you know, assaulted so it's—it was difficult to talk to them. And frankly, the stuff that bothers me I don't like talking about anyway, so it was really hard to get into a therapy situation. I'm fortunate now that I found somebody that I can talk to. But before, it was always just so male driven in the VA. (Tr. 700-01.)

As plaintiff stated, she started consistently attending therapy after her providing facility offered a women's program with a female therapist. (Tr. 699.) Plaintiff elaborated, "[i]t feels a lot safer for me to be able to talk to another female, so this is the first time I've done therapy in kind of successful environment, so it's actually kind of been really a good thing for me." (Tr. 701.) In the decision, the ALJ failed to consider plaintiff's reasons for not having a more robust treatment history and erred in discounting Eckstein's assessed limitations on that basis.

The ALJ's second reason for finding Eckstein's opinion inconsistent with the record is also flawed. The ALJ found Eckstein's assessment of plaintiff's limitations inconsistent with

Page 11 – OPINION AND ORDER
*Sara M. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01074-AR

plaintiff's activities of daily living (ADLs). (Tr. 666.) A medical opinion can be undermined by a claimant's reported activities if supported by substantial evidence. *Ford*, 950 F.3d at 1155. Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (holding that claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)).

Here, the ALJ found plaintiff's ability to enjoy hobbies and travel as evidence that her limitations were not as debilitating as Eckstein opined. To support that finding, the ALJ cited plaintiff's activities of

> water color painting, creative writing, watching movies on TV, and reading 2 to 3 e-Books per week on her tablet. She went on camping trips with her parents and fished with them from a boat. She related she had a Costco membership, which suggested that she has been able to shop at a Costco Wholesale Club. (Tr. 666.)

The ALJ failed to explain how those minimal activities were inconsistent with Eckstein's opinion. For example, it is not apparent from the record how plaintiff's ability to paint, write, read, or watch television while at home (which she shares with her parents) are inconsistent with Eckstein's opinion that her impairments significantly impair her occupational functioning. Nor is it apparent how plaintiff's ability to camp, fish, and possibly shop at Costco Wholesale Club was inconsistent with Eckstein's opinion that plaintiff would have marked difficulty dealing with the usual stress of work, interacting with co-workers, and completing a normal workday or work week. (Tr. 593, 596.) Therefore, the ALJ's determination that plaintiff's ADLs are inconsistent with Dr. Eckstein's opinion is not supported by substantial evidence in the record.

Next, the ALJ found Dr. Eckstein's opinion unsupported because the examination "revealed [plaintiff] was nervous, but otherwise objective findings were largely normal," and because Dr. Eckstein relied on plaintiff's subjective reports to formulate her limitations. (Tr. 666.) As explained above, the ALJ is not allowed to "cherry pick" the record. Here, the ALJ discounted Dr. Eckstein's assessed limitations based on plaintiff's cognitive abilities and her ability to properly interact with Dr. Eckstein. (Tr. 666, 594-95.) Again, the fact that plaintiff could interact with Dr. Eckstein in a private treatment environment ignores Dr. Eckstein's report that plaintiff's mood and affect were anxious. (Tr. 595.) The ALJ erred in ignoring the evidence that supported Dr. Eckstein's opinion.

Moreover, Dr. Eckstein's reliance on plaintiff's subjective complaints is not a proper reason to find that opinion unsupported because psychiatric evaluations uniquely rely on patients to self-report their symptoms. A lack of supporting objective medical evidence alone may not be sufficient to discount subjective reports in the context of mental health impairments which generally are less (or not at all) susceptible to objective measurement. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may seem subjective, especially compared to evaluation in other medical fields [but] [d]iagnoses will always depend in part on the patient's self-report, as well as the clinician's observations of the patient [so] the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.") (citations omitted). Therefore, the ALJ's rationale in finding Eckstein's opinion unsupported is not backed by substantial evidence and the ALJ erred in finding Eckstein's medical opinion unpersuasive.

In summary, the ALJ's erred in rejecting plaintiff's subjective symptom testimony and in evaluating the medical opinions of Drs. Boyd and Eckstein.

C.     *Remedy*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Trevizo*, 871 F.3d at 682. The issue turns on the utility of further proceedings. *Garrison*, 759 F.3d at 1019, 1021. Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

All the credit-as-true criteria are satisfied here. The ALJ erred in evaluating plaintiff's symptom testimony and improperly evaluated Drs. Boyd and Eckstein's opinions. The record is fully developed and there are no outstanding issues to resolve. Plaintiff testified that she would have spotty attendance if she returned to work and that she experiences severe anxiety when triggered. What might trigger her severe anxiety, which manifests physically, is unpredictable and can even be triggered by people arguing in a movie. When triggered, plaintiff's mind races

and she cannot control her thoughts. (Tr. 593, 705-06.) Dr. Boyd opined that due to plaintiff's medical impairments, she would require an understanding supervisor at work. (Tr. 100.) Dr. Eckstein opined that, due to plaintiff's impairments, her occupational functioning was significantly impaired, she would have marked difficulty completing a normal workday or work week without interruptions, and she would have marked difficulty dealing with the usual stresses of a workplace. (Tr. 593, 596.) The vocational expert testified that being off task for 15 percent or more of a workday and that missing more than one day of work a month would be unacceptable in the competitive job market. Additionally, the vocational expert testified that having an understanding supervisor is not something that can be controlled in a competitive marketplace. (Tr. 714-15.) Furthermore, the court's review of the record creates no serious doubt that plaintiff is, in fact, disabled. Accordingly, the court exercises its discretion to remand this case for an immediate award of benefits.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's decision and REMANDS for an immediate calculation of benefits.

ORDERED: August 28, 2025.

_/s/ Jeff Armistead_
JEFF ARMISTEAD
United States Magistrate Judge
